1
2
3
4
5
6
7
8
9
10
11

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

12

RAMIRO PEREZ,

Case No. 1:17-cv-01726-EPG

13

Plaintiff,

**FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT**

14

v.

15

COMMISSIONER OF SOCIAL SECURITY,

16
17

Defendant.

18
19
20

 This matter is before the Court on Plaintiff's complaint for judicial review of an

21

unfavorable decision by the Commissioner of the Social Security Administration regarding his

22

application for Disability Insurance Benefits and Supplemental Security Income. The parties have

23

consented to entry of final judgment by the United States Magistrate Judge under the provisions

24

of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF Nos. 5,

25

6).

26

 At a hearing on March 28, 2019, the Court heard from the parties and, having reviewed

27

the record, administrative transcript, the briefs of the parties, and the applicable law, finds as

28

follows:

1

**A. ALJ's Weighing of Opinion by Dr. Fine, Plaintiff's Treating Physician**

Plaintiff first challenges the decision of the Administrative Law Judge ("ALJ"), on the ground that she improperly gave little to no weight to the opinions of the treating pain medicine specialist, Dr. Fine. The Ninth Circuit has held regarding such opinion testimony:

> The medical opinion of a claimant's treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician. *Id.* § 404.1527(c)(2)–(6). "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (alteration in original) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (quoting *Bayliss*, 427 F.3d at 1216); *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("[The] reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion."). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

*Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017). Dr. Fine's opinion is contradicted by two non-examining State Disability Determination Services physicians. Thus, this Court examines whether the ALJ provided specific and legitimate reasons supported by substantial evidence for giving little to no weight to Dr. Fine's opinions.

The ALJ gave the following reasons for the weight given to Dr. Fine's opinions:

> The April 2014 medical source statement completed by Dr. Fine within the Workers' Compensation context is given no weight. Ex. B1F. Dr. Fine opined the claimant was limited to lifting 10 pounds and that he could not repetitively bend or stoop. In addition, he was limited to 30 minutes sitting/standing at a time with 5 minutes rest. This opinion was also noted in August 2013 in March 2015. Ex. 5F. These opinions are given little weight. Medical reports generated in the context of

1  a workers' compensation claim are generally adversarial in nature.  In addition, the
   definition of disability in a workers' compensation case is not the same as a Social
2  Security disability case.  Finally, whether the claimant is "disabled" is a
   determination reserved to the Commissioner (20 CFR 404.1527€ and SSR 96-5p).
3  In this case, the longitudinal medical evidence of record and the claimant's
   reported activities of daily living, discussed previously, fails to establish the degree
4  of limitation opined by Dr. Fine.  Similarly with Dr. Fine's December 2014 Spinal
   Impairment Questionnaire.  Ex. 4F.  And, in addition, I note that the noted
5  limitations in Dr. Fine's medical source statements are also supported by his own
   treatment notes.  For example, June 3, 2015 and February and March 2016
6  treatment notes say nothing regarding restrictions and none are given.  Ex. 6F.
7
8  (A.R. 29).

9         While it is true that Dr. Fine's treatment records were sent to the Department of Social

10 Services along requests for authorization for certain medication and gym membership, they do

11 not otherwise fit the ALJ's description.  They do not advocate for a finding of disability.  Indeed,

12 they do not take any position regarding Plaintiff's allegation of disability, under Workers

13 Compensation or any other standard.  The only opinion Dr. Fine appears to give to workers

14 compensation is that Plaintiff should receive certain prescribed medication (e.g. hysingla, feldene,

15 Colace) (A.R. 355) as well as a gym membership to perform pool exercises.  (A.R. 342, 343).

16 Rather than being an advocacy document to Worker's Compensation, the records consist

17 primarily of Dr. Fine's examining notes based on a series of monthly examining consultations,

18 reflecting Plaintiff's complaints, physical examination findings, Dr. Fine's medical impressions,

19 prescription medication, and plan/recommendations.  The ALJ's description does not match Dr.

20 Fine's record and does not provide a basis to discount these medical notes, especially the findings

21 in Dr. Fine's physical examination and resulting impressions.  Accordingly, the ALJ's reasoning

22 that Dr. Fine's notes should be discounted because they were made in the context of a Workers

23 Compensation claim is not a specific and legitimate reason supported by substantial evidence.

24        The ALJ's next reason to discount Dr. Fine's records was "In this case, the longitudinal

25 medical evidence of record and the claimant's reported activities of daily living, discussed

26 previously, fails to establish the degree of limitation opined by Dr. Fine."  The ALJ does not cite

27 to any portions of the record for this comment.  Nor does the ALJ cast any doubt on Dr. Fine's

28 own physical examinations and observations, which were the basis for Dr. Fine's own

conclusions.  The ALJ does not cite to any physical examination records contradicting Dr. Fine's own examination findings.  As for activities of daily living, the ALJ's description of them as normal is highly contested in the record, as described further below.  In any event, those activities do not necessarily contradict any finding of limitation by Dr. Fine.  Specifically, the ALJ asserts that Plaintiff "has no outside activities.  He is able to pay bills and handle cash appropriately.  He is able to go out alone without difficulty and his relationships with family and friends are reported to be fair.  He has no difficulty completing household tasks and has no difficulty making decisions on a daily basis.  On a daily basis, the claimant awakes, does personal hygiene, prepares food, does chores and house cleaning, shops, does yard work, watches TV, reads, uses a computer, eats and sleeps." (A.R. 25).  Setting aside whether this is a fair conclusion from the record, none of these activities contradict Dr. Fine's limitations.  For example, they do not establish that Plaintiff can lift more than 10 lbs. or can stand more than 30 minutes at a time.  Thus, this statement also does not provide a specific and legitimate reason supported by substantial evidence.

The ALJ next states that "I note that the noted limitations in Dr. Fine's medical source statements are also supported by his own treatment notes." (A.R. 29)  This statement appears to support Dr. Fine's opinions, rather than discredit them, and thus does not provide a specific and legitimate reason for giving little or no weight to Dr. Fine's opinion.

Finally, the ALJ states that "[f]or example, June 3, 2015 and February and March 2016 treatment notes say nothing regarding restrictions and none are given." (A.R. 29).  While it is true that a minority of Dr. Fine's treatment notes do not have a section describing specific limitations, the majority of Dr. Fine's notes include such specific limitations.  (See, e.g., A.R. 371 ("I told him no lifting more than 10lbs . . . .")).  In any event, there is no requirement for an examination physician to include specific limitations in their notes for every examination.  This last reason also does not provide specific and legitimate reasons supported by substantial evidence.[1]

_____

[1] At the hearing, although not in its opposition, the Commissioner argued that the ALJ's treatment of Dr. Fine's opinions was harmless error because Plaintiff qualified for sufficient jobs

4

## B. The ALJ's Treatment of Plaintiff's Subjective Symptom Testimony

Plaintiff next challenges the ALJ's evaluation of Plaintiff's testimony. As to subjective testimony, the Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony ... simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.

> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so[.]

Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted). Given that there is objective medical evidence of an underlying impairment, the Court examines whether the ALJ rejected Plaintiff's subjective symptom testimony by offering specific, clear and convincing reasons.

The ALJ provided the following reasons for the weight given to Plaintiff's subjective symptom testimony:

> Persuasiveness is reduced by several factors. For example, persuasiveness is reduced by the fact that despite impairment, the claimant has engaged in a somewhat normal level of daily activity and interaction. As discussed previously, the claimant reported that he was currently living alone. Ex. B2F. He had been married and divorced once and had no children. He was able to take care of

_____

in the economy even crediting Dr. Fine's limitations. Plaintiff disputes this. As discussed on the record, it appears there is a difference of opinion regarding both what limitations follow from Dr. Fine's opinion and regarding the availability of jobs with such limitations. The Court declines to hold that the ALJ's treatment of Dr. Fine's opinions was harmless. Nevertheless, the Court does not order an award of benefits because the record does not clearly establish the effect of Dr. Fine's limitations on the availability of jobs for Plaintiff.

personal hygiene tasks including dressing and bathing without
difficulty.  The claimant has no outside activities.  He is able to pay
bills and handle cash appropriately.  He is able to go out alone
without difficulty and his relationships with family and friends are
reported to be fair.  He has no difficulty completing household tasks
and has no difficulty making decisions on a daily basis.  On a daily
basis, the claimant awakes, does personal hygiene, prepares food,
does chores and house cleaning, shops, does yard work, watches
TV, reads, uses a computer, eats, and sleeps.  Although the
claimant's activities of daily living were somewhat limited, some of
the physical and mental abilities and social interactions required in
order to perform these activities are the same as those necessary for
obtaining and maintaining employment and are inconsistent with
the presence of an incapacitating or debilitating condition.  The
claimant's ability to participate in such activities undermined the
persuasiveness of the claimant's allegations of disabling functional
limitations.  Moreover, even if the claimant's daily activities are
truly as limited as alleged, it is difficult to attribute that degree of
limitation to the claimant's medical condition, as opposed to other
reasons, in view of the relatively benign medical evidence and other
factors discussed in this decision.  In short, it appears the limited
range of daily activities is not due to any established impairment.

Finally, the persuasiveness of the claimant's allegations regarding
the severity of symptoms and limitations is diminished because
those allegations are greater than expected in light of the objective
evidence of record.  The medical evidence indicates the claimant
received routine conservative treatment for the impairments.
Moreover, the positive objective clinical and diagnostic findings
since the alleged onset date detailed below do not support more
restrictive functional limitations than those assessed herein.  Thus,
after careful consideration of the evidence, I find that the claimant's
medically determinable impairments could reasonably be expected
to cause the alleged symptoms; however, to the extent that they are
inconsistent with the above residual functional capacity assessment,
the claimant's statements concerning the intensity, persistence, and
limiting effects of these symptoms are not entirely consistent with
the medical evidence and other evidence in the record for the
reasons explained in this decision.

(A.R. 27).

After a review of the record, the Court finds that the first paragraph, regarding activities of

daily living, is not an accurate description of the record on this point.  The ALJ portrays that

Plaintiff's unlimited ability to engaged in normal activities of daily living is undisputed, and then

uses such activities to cast doubt on Plaintiff's description of his symptoms.  (*Id.; see also* A.R.

25 ("The first functional area is activities of daily living.  In this area, the claimant had no

limitation").  However, this was far from undisputed.  Plaintiff, as well as multiple third-party

statements, testified that Plaintiff suffered from substantial limitations to activities of daily living. For example, Plaintiff testified at the hearing that he wakes up at "maybe 8:00, 9:00," then sits down and watches some TV for two or three hours, eats something simple like cookies and milk, and does not do much else. (A.R. 60-61). Regarding hygiene, he testified that he would wash and dress himself every two or three days. (A.R. 61). To wash clothes, he would "put the clothes in the washer and then [he] would sit down, lay down for awhile." (A.R. 61). He did not perform household chores like vacuuming, dusting, and mopping because "all the movement, I don't have the energy for that and with the constant pain I'm in, I can't do that." (A.R. 61). He testified that friends of his would come over to help him once a week or every two weeks with household chores like mowing the lawn. (A.R. 61-62). Furthermore, Plaintiff's stated limitations were supported by multiple third-party statements, which even the ALJ elsewhere summarizes as showing "significant limitations in nearly all of his activities and functionality." (A.R. 30). In other words, the activities of daily living as presented by Plaintiff and multiple third-party statements would appear to support, not contradict, Plaintiff's description of his symptoms.

Instead of acknowledging this record, the ALJ cites to one page in the record, which includes a summary of activities of daily living prepared by an examining psychiatrist. (A.R. 311 ("He has no difficulty completing household tasks and has no difficulty making decisions on a daily, basis. On a daily basis, the claimant awakes, does personal hygiene, prepares food, does chores and house cleaning, shops, does yard work, watches TV, reads, uses a computer, eats, and sleeps.")). The question for this Court is whether this description in the psychiatrist's report provides a clear and convincing reason to reject Plaintiff's description of his symptoms. The Court finds that it is not. It is not at all clear why the psychiatrist reported such activities when Plaintiff and the third parties do not, and the ALJ does not attempt to resolve this discrepancy. It is worth noting that elsewhere in the same report, the psychiatrist notes that Plaintiff has reported past/current medical issues of spinal pain, knee pain, headaches, and problems with balance and walking. (A.R. 310). It also notes that Plaintiff told the doctor "he worked but quit because of increasing spinal pain." (A.R. 311). The psychiatrist also concluded after his examination that Plaintiff was markedly impaired in his ability to associate with day-to-day work activity,

markedly impaired in his ability to maintain regular attendance in the work place, and markedly impaired in his ability to perform work activities without special or additional supervision. (A.R. 314). Taken as a whole, the psychiatrist's portrayal of Plaintiff's limitations appear consistent with Plaintiff's symptoms. While the paragraph of the report relied on by the ALJ does appear to contradict Plaintiff's (and third-parties') description of his activities provided elsewhere, it alone taken in context is not a clear and convincing reason to find that Plaintiff exaggerated his symptoms.

The ALJ next opines that any limitations testified by the Plaintiff are not due to his impairment. (A.R. 27 ("Moreover, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively benign medical evidence and other factors discussed in this decision. In short, it appears the limited range of daily activities is not due to any established impairment."). This is wholly unsupported. The ALJ does not cite to any evidence or medical opinion supporting a different cause for his limitations. The ALJ does not even state what an alternate cause could possibly be. Moreover, Dr. Fine's many reports on Plaintiff's statements of pain and physical tests appear to support that Plaintiff's impairments cause substantial limitations. Although the ALJ refers to "benign medical evidence," the ALJ cites to none. The ALJ's speculation that something else might be causing Plaintiff's symptoms is not a clear and convincing reason to reject Plaintiff's testimony.

Finally, the ALJ opines that Plaintiff's conservative treatment is a reason to doubt Plaintiff's symptoms. The ALJ does not suggest what more aggressive treatment would have been considered if Plaintiff truly had such symptoms. After all, Plaintiff consulted with a pain specialist, Dr. Fine, every month for a substantial amount of time. He took narcotics and other medication to control his pain. He did pool exercises daily until that treatment was denied, and then he repeatedly attempted to regain access to a pool. (Exhibit B1F). Additionally, Plaintiff testified at the hearing that he lacked insurance for much of this time and could only obtain treatment through the workers compensation system. (A.R. 65-66). When he got insurance, he had trouble obtaining a doctor. (A.R. 66-67 ("Well, as far as getting a doctor I've tried and tried

and tried and they keep—I try to get a doctor and they tell me they're not accepting patients after I've picked a doctor."). The ALJ does not address these issues in deciding to discount Plaintiff's testimony based on the failure to obtain some other hypothetical treatment.

In sum, the ALJ's reasons for rejecting Plaintiff's subjective symptom testimony are not sufficiently specific, clear and convincing.

**C. Conclusion**

The Court thus remands this case to the ALJ and directs the ALJ upon remand to consider Dr. Fine's medical opinions as well as Plaintiff's description of his symptoms in light of this decision, and to evaluate whether the limitations reflected therein would render him disabled as defined in the Social Security Act.

Accordingly, the decision of the Commissioner of the Social Security Administration is REVERSED and REMANDED for further administrative proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated:  __**April 4, 2019**__                    /s/ _Erin P. Grog_
                                                    UNITED STATES MAGISTRATE JUDGE